SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**<u>Hansen v. Rite Aid Corp.</u> (A-47-21) (086430)**

**Argued September 29, 2022 -- Decided March 15, 2023**

**PATTERSON, J., writing for a unanimous Court.**

In the context of legal fee awards, a "lodestar" is the number of hours reasonably expended multiplied by the reasonable hourly rate. In this appeal, the Court considers the trial court's reduction of the lodestar calculation proposed by plaintiff Harold Hansen in seeking attorney's fees and costs after prevailing against his former employer, defendant Rite Aid Corp., on a claim for discrimination based on sexual orientation contrary to the Law Against Discrimination (LAD). The Court also considers the trial court's denial of legal fees incurred on appeal under <u>Rule</u> 2:11-4 and its assessment of the contingency enhancement of the lodestar at 20%.

After his employment was terminated in May 2008, plaintiff brought claims against Rite Aid and other defendants alleging age discrimination, sexual orientation discrimination, and gender discrimination in violation of the LAD, as well as several common law claims. After three trials, a jury returned a verdict in plaintiff's favor on his LAD sexual orientation discrimination claim and awarded him a total of $420,500 in compensatory and punitive damages.

Plaintiff moved for an award of counsel fees and costs. In plaintiff's initial submission, he asked the trial court to determine that a reasonable hourly rate for his lead counsel and the attorney who assisted in the first of the three trials was $725, and that a reasonable number of hours spent on this matter was 3,252. He requested that the trial court determine the lodestar to be $2,355,892.50, and that the court apply a one hundred percent enhancement to the lodestar. Plaintiff also sought an award of costs. In total, plaintiff requested an award of $5,035,773.50.

In support of plaintiff's fee application, his lead counsel submitted a certification. Plaintiff's counsel attributed the large number of hours billed to erroneous rulings by the trial judges. She attached to her certification an invoice setting forth time entries reflecting claimed billable hours, and enumerating the disbursements included in the proposed award of costs. Defendants opposed the application, challenging the $725 hourly rate as well as aspects of the records submitted by plaintiff's counsel.

1

The trial court issued a seventy-three-page decision with a fifty-four-page spreadsheet reflecting its analysis of the time entries and disbursements set forth in plaintiff's invoice. The court ruled that a reasonable hourly rate for plaintiff's lead counsel in this case was $375 per hour and a reasonable hourly rate for the assistant attorney was $325 per hour.

The trial court also found that the total number of hours for which plaintiff sought an award of fees was unreasonable. The court identified several categories of legal work improperly included in plaintiff's fee application, including work on unrelated matters. The trial court also excluded all time entries reflecting plaintiff's counsel's representation of plaintiff in the Appellate Division and in this Court; in the trial court's view, it could award no fees for appellate work because plaintiff did not seek an award in either appellate court under Rule 2:11-4. The trial court cited plaintiff's counsel's multiple entries claiming that more than twenty-four hours of legal work had been performed in a single day. It stated that unwarranted hours were billed for certain tasks and ruled that counsel had spent an excessive amount of time on the fee application itself.

The court also rejected many of plaintiff's claims for costs incurred in disbursements to vendors, finding the request to be replete with errors and duplicate entries and inadequately supported with vendor receipts. Noting that plaintiff was successful on only one claim and that plaintiff's lead counsel performed tasks that should have been assigned to a junior attorney or a paralegal, the trial court reduced the lodestar by twenty percent.

The trial court then considered plaintiff's request for a one hundred percent enhancement of the lodestar because plaintiff's counsel represented plaintiff on a contingent fee. Noting the complex procedural history of the case, counsel's confidence in the strength of plaintiff's claims as reflected by the settlement demands she made on plaintiff's behalf, and the attorney's risk of nonpayment, the trial court awarded a twenty percent enhancement of the lodestar.

The trial court awarded $741,387.97 in fees and costs. The Appellate Division affirmed, and the Court granted certification. 250 N.J. 353 (2022).

**HELD:** *The Court concurs with the Appellate Division that the trial court properly exercised its discretion when it set the reasonable hourly rate for plaintiff's counsel's work, assessed the number of hours reasonably expended by plaintiff's counsel in pretrial proceedings and at trial, reduced the lodestar because of plaintiff's limited success and other factors, and determined plaintiff's application for an award of costs.

2

*The Court reverses the Appellate Division's judgment in two respects. First, the Court holds that when an appellate court reverses a judgment and remands for further proceedings, and the plaintiff is not yet a prevailing party when the appeal concludes, Rule 2:11-4 sets an unworkable and unfair deadline for applications for legal fees incurred on appeal. The Court vacates the trial court's denial of all appellate legal fees and remands for a detailed review of plaintiff's application for those appellate fees under the principles stated in Rendine v. Pantzer, 141 N.J. 292 (1995), and Walker v. Giuffre, 209 N.J. 124 (2012). Second, the Court reverses the Appellate Division's judgment affirming the trial court's assessment of the contingency enhancement of the lodestar at twenty percent. This appeal is a typical discrimination case warranting a contingency enhancement between 20 and 35%, but the attorney's risk of nonpayment in this protracted proceeding justifies an enhancement within that range that is higher than 20%.

1. The Court reviews the LAD's fee-shifting provision, which enables a "prevailing party" to "be awarded a reasonable attorney's fee as part of the cost." N.J.S.A. 10:5-27.1 Noting that fee-shifting statutes are an exception to the American Rule under which each party pays the party's own legal fees, the Court reviews the court rules that set strict requirements for applications for awards of fees and costs, including support by an affidavit that assesses the RPC 1.5(a) factors, which govern the reasonableness of the fees charged. (pp. 18-22)

2. A court's most critical task in a fee award proceeding "is to determine the 'lodestar.'" Rendine, 141 N.J. at 334-35. Trial courts must "evaluate carefully and critically the aggregate hours and specific hourly rates advanced by counsel for the prevailing party to support the fee application," rather than "accept passively the submissions of counsel to support the lodestar amount." Id. at 335. The first step in the court's analysis is to determine the reasonableness of the rates proposed by counsel for the prevailing party, who must support the fee application with proof of the reasonableness of the requested hourly rate, including evidence of the rates charged by lawyers of reasonably comparable skill, experience, and reputation in the relevant community. The second component of the lodestar is the number of hours reasonably expended in the litigation. As noted in Walker, applications for counsel fees are to "be accompanied by contemporaneously recorded time records that fully support the calculation of hours expended by all attorneys who participated in the matter." 209 N.J. at 131. "[R]eliance on reconstructed records [is permitted] only in 'exceptional' circumstances," and courts retain "the 'discretion to exclude from the lodestar calculation hours for which counsel's documentary support is marginal.'" Id. at 131-32. In Rendine, the Court instructed trial courts to analyze in detail an attorney's calculation of the number of hours reasonably expended, noting that "[i]t does not follow that the amount of time actually expended is the amount of time reasonably expended." 141 N.J. at 335. Third, a trial court should decrease the lodestar if the prevailing party achieved limited success in relation to the relief he

3

had sought. Fourth, when the prevailing party's counsel has handled the matter under a contingent fee arrangement, the trial court should decide whether that attorney is entitled to a fee enhancement. In Rendine, the Court "established guidelines that were designed to effectuate the purposes that statutory fee-shifting provisions are intended to advance." Walker, 209 N.J. at 138. And in Walker, the Court reaffirmed that the "ordinary" range for a contingency enhancement is between five and fifty percent of the lodestar, the "typical" range is between twenty and thirty-five percent of the lodestar, and a one hundred percent enhancement is reserved for the "rare and exceptional case." Ibid. (quoting Rendine, 141 N.J. at 343). The Court reaffirms the standard set forth in Rendine and its progeny, which governs determination of this appeal. (pp. 22-28)

3. The trial court properly exercised its discretion when it calculated a reasonable hourly fee for the legal services provided by plaintiff's counsel. As the trial court noted, plaintiff did not present the required proofs of the hourly rates prevailing in the community for similar services by comparable lawyers. The Court does not approve of the trial court's reference to billing rates cited in unpublished Appellate Division opinions and cautions trial courts to avoid relying on such opinions in determining applications for attorneys' fees and costs. But the reference to unpublished opinions here was not material to the trial court's determination of a reasonable billing rate. The Court notes that its affirmance of the trial court's discretionary decision in this case should not be viewed as a generic approval of a maximum or minimum billing rate for other cases. (pp. 29-31)

4. Reviewing the trial court's determination of a reasonable number of hours spent in legal services rendered in pretrial proceedings and at trial, the Court finds that the trial court undertook the meticulous analysis envisioned in Rendine and that its line-by-line deletions and reductions of time entries constituted a proper exercise of its discretion. The trial court also acted within its discretion when it found that plaintiff's lack of success in pursuing the majority of his claims warranted a twenty percent reduction of the lodestar. (pp. 31-33)

5. Rule 2:11-4 requires that a motion for legal fees rendered in an appeal "be served and filed within 10 days after the determination of the appeal." In this matter, plaintiff did not file an application under Rule 2:11-4 during the ten-day period following the determination of either of his prior appeals. The trial court therefore excluded all of plaintiff's counsel's legal fees for appellate work from the fee award. The Court acknowledges that the trial court and the Appellate Division enforced Rule 2:11-4's express language to bar plaintiff's application for legal fees on appeal. This case illustrates, however, that the ten-day time limit set forth in Rule 2:11-4 is impractical and inequitable in certain settings. In the wake of the Appellate Division's determination of his first and second appeals, plaintiff was not yet a "prevailing party" entitled to seek counsel fees under N.J.S.A. 10:5-27.1.

4

Accordingly, during each of the two ten-day time periods during which plaintiff could have sought attorneys' fees for his counsel's appellate work under Rule 2:11-4, he had no right to such fees under N.J.S.A. 10:5-27.1. The Court notes that the Eleventh Circuit has adopted an exception to the deadline for the filing of an application for attorneys' fees, and the Court finds that exception to sensibly promote judicial economy and to fairly balance the interests of parties litigating claims under fee-shifting statutes. The Court requests that the Civil Practice Committee propose an analogous amendment to Rule 2:11-4. Absent exceptional circumstances, such an amendment would apply only to fee-shifting cases in which an appellate court reverses and remands for further proceedings, such that the party that has succeeded in the appeal is not yet a prevailing party entitled to an award of fees and costs. In such a setting, a party that later becomes a prevailing party by virtue of a determination on remand should be permitted to seek appellate legal fees directly from the trial court. Pending the Civil Practice Committee's recommendation of an amended Rule and the Court's consideration of that recommendation, courts, parties, and counsel should proceed in accordance with the procedure for applications for appellate fees set forth in this opinion. The Court provides guidance for remand. (pp. 33-37)

6. Turning to the contingency fee enhancement, the Court explains that this case constitutes "typical" employment discrimination litigation in which a fee enhancement in the range between 20 and 35% of the lodestar is generally appropriate. See Walker, 209 N.J. at 138; Rendine, 141 N.J. at 343. Nonetheless, the Court does not concur that a twenty percent enhancement -- at the lowest level of the range for typical litigation -- is appropriate for this case. Over more than a decade, plaintiff's counsel, representing plaintiff on a contingent-fee basis, tried the case three times and litigated two appeals on the merits to the Appellate Division. Counsel's risk of nonpayment was significant. To fairly compensate plaintiff and to further the objectives of N.J.S.A. 10:5-27.1, some degree of increase in the enhancement is warranted. See Walker, 209 N.J. at 148; Rendine, 141 N.J. at 338. The Court provides guidance for remand. (p. 38-39)

**AFFIRMED in part, REVERSED in part, and REMANDED.**

**CHIEF JUSTICE RABNER; JUSTICES SOLOMON and PIERRE-LOUIS; and JUDGE SABATINO (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUSTICE FASCIALE did not participate.**

SUPREME COURT OF NEW JERSEY
A-47 September Term 2021
086430

Harold Hansen,

Plaintiff-Appellant,

v.

Rite Aid Corp.
and Craig Mauriello,

Defendants-Respondents,

and

Eckerd Corporation,
Michelle Caga, and Lisa Ford,

Defendants.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| September 29, 2022 | March 15, 2023 |

Denise Campbell argued the cause for appellant (Campbell
Legal Associates, attorneys; Denise Campbell, on the briefs).

Peter F. Berk argued the cause for respondents (Genova
Burns, attorneys; James Bucci, of counsel and on the
brief, and Peter F. Berk, on the brief).

Jon W. Green argued the cause for amicus curiae
National Employment Lawyers Association of New

1

Jersey (Green Savits, attorneys; Jon W. Green, of counsel and on the brief, and Sara Kaplan-Khodorovsky, on the brief).

Molly K.C. Linhorst argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Molly K.C. Linhorst, Jeanne LoCicero, and Alexander Shalom, on the brief).

Deborah L. Mains submitted a brief on behalf of amicus curiae New Jersey Association for Justice (Costello & Mains, attorneys; Deborah L. Mains, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In Rendine v. Pantzer, 141 N.J. 292, 316-45 (1995), and Walker v. Giuffre, 209 N.J. 124, 130-41 (2012), we set forth a procedure for a trial court's award of fees and costs to a prevailing party under N.J.S.A. 10:5-27.1, the fee-shifting provision of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50. Pursuant to Rendine and Walker, the trial court determines a reasonable hourly rate for the prevailing party's counsel and a reasonable number of hours spent on the litigation, calculates the lodestar by multiplying the hourly rate by the number of hours, and decreases the lodestar if it determines that the prevailing party achieved limited success in comparison to the relief sought in the litigation. Walker, 209 N.J. at 130-33; Rendine, 141 N.J. at 334-37. If the attorney's compensation is partly or entirely contingent

2

on a successful outcome, the trial court then considers an enhancement to the lodestar in accordance with prescribed guidelines to account for the risk of nonpayment that the attorney assumed by pursuing the case. Ibid. We held that in its inquiry, a trial court should "carefully and critically" analyze the hourly rates and aggregate hours proposed by the prevailing party. Walker, 209 N.J. at 131; Rendine, 141 N.J. at 335.

This appeal arises from plaintiff Harold Hansen's LAD claims for gender, sexual orientation, and age discrimination, and his common-law causes of action against his former employer Rite Aid Corporation (Rite Aid) and four other defendants. After three trials and two appeals, plaintiff was awarded damages on his LAD claim for discrimination based on sexual orientation. Plaintiff did not prevail on his other claims.

Plaintiff sought an award of more than five million dollars in legal fees and costs. The trial court found that the hourly rate sought by plaintiff substantially exceeded a reasonable hourly rate for his counsel's work. Carefully scrutinizing the fee application, the court excluded many of the time entries and disbursements set forth in the application on the grounds that they were unsubstantiated, inaccurate, or represented legal work that was unnecessary. The trial court reduced the lodestar by twenty percent because of plaintiff's limited success and other factors. It rejected in its entirety

3

plaintiff's application for legal fees incurred on appeal on the ground that plaintiff did not file that application within the time constraints imposed by Rule 2:11-4. The court added a twenty percent contingency enhancement to the lodestar and awarded a total of $741,387.97 in attorneys' fees and costs.

Plaintiff appealed the award, and the Appellate Division affirmed the trial court's determination. We granted plaintiff's petition for certification.

We concur with the Appellate Division that the trial court properly exercised its discretion when it set the reasonable hourly rate for plaintiff's counsel's work, assessed the number of hours reasonably expended by plaintiff's counsel in pretrial proceedings and at trial, reduced the lodestar because of plaintiff's limited success and other factors, and determined plaintiff's application for an award of costs.

We reverse the Appellate Division's judgment in two respects. First, we hold that when an appellate court reverses a judgment and remands for further proceedings, and the plaintiff is not yet a prevailing party when the appeal concludes, Rule 2:11-4 sets an unworkable and unfair deadline for applications for legal fees incurred on appeal. We vacate the trial court's denial of all appellate legal fees based on Rule 2:11-4 and remand to the court for a detailed review of plaintiff's application for those appellate fees under the principles stated in Rendine and Walker.

4

Second, we reverse the Appellate Division's judgment affirming the trial court's assessment of the contingency enhancement of the lodestar at twenty percent. We view this appeal to be a typical discrimination case warranting a contingency enhancement between twenty and thirty-five percent, not the rare and exceptional case warranting a greater enhancement. Nonetheless, we conclude that the attorney's risk of nonpayment in this protracted proceeding justifies an enhancement within that range that is higher than twenty percent.

Accordingly, we affirm in part and reverse in part the Appellate Division's judgment, and we remand this matter to the trial court for reconsideration of its decision as to the appellate legal fees and the contingency enhancement.

## I.

## A.

In this action, plaintiff alleges that between August 1973 and May 2008, he was employed at a retail pharmacy in Spring Lake owned by defendant Eckerd Corporation (Eckerd), and later owned by Rite Aid after its acquisition of Eckerd.[1] Plaintiff contends that Rite Aid unlawfully terminated his

---

[1] The trial transcripts are not part of the record submitted to the Court or to the Appellate Division. We base our summary of the allegations on the amended complaint and the parties' briefs.

employment on May 22, 2008, and that defendants Craig Mauriello, Michelle Caga, and Lisa Ford, managers employed by Rite Aid, committed wrongful acts that led to his termination.

In his amended complaint, filed on February 17, 2009, plaintiff pled claims for age discrimination, sexual orientation discrimination, and gender discrimination in violation of LAD, as well as common-law claims for wrongful termination, breach of employment contract, defamation, libel, slander, and intentional infliction of emotional distress. Plaintiff sought compensatory damages, punitive damages, attorneys' fees, and costs.

The first of three trials in this matter took place in December 2013.[2] The jury found in favor of plaintiff on his defamation claim against Rite Aid, Mauriello, and Ford. It awarded $75,000 in compensatory damages on that claim, as well as $50,000 in punitive damages against Rite Aid and $500 in punitive damages against Ford. The jury rejected plaintiff's claims for age and sexual orientation discrimination under LAD. The trial court entered a judgment notwithstanding the verdict pursuant to Rule 4:40-2.

---

[2] For reasons unexplained in the record or the briefs, plaintiff's LAD claim for gender discrimination, his claim for wrongful termination, and his claim for intentional infliction of emotional distress were abandoned or dismissed prior to the first trial.

6

Plaintiff appealed the trial court's judgment. The Appellate Division concluded that plaintiff waived his appeal of the trial court's judgment notwithstanding the verdict by not challenging that determination in his brief. The appellate court held, however, that pretrial rulings by the trial court on discovery issues and the court's decision to exclude certain deposition testimony at trial constituted an abuse of discretion warranting a new trial. The Appellate Division reversed the trial court's judgment and remanded for a new trial.

The case was reassigned to a different trial judge, who conducted the retrial in March 2017. The jury returned a verdict on plaintiff's LAD claim for discrimination based on sexual orientation against Rite Aid and Mauriello but denied that claim as to Ford and Caga. The jury rejected plaintiff's age discrimination claim. It awarded to plaintiff $45,000 in back pay, $250,000 in front pay, and $200,000 in emotional distress damages.

Prior to the jury's determination of plaintiff's claim for punitive damages, the trial court granted in part and denied in part defendants' motion for judgment under Rule 4:40-1. The court determined that it had improperly admitted evidence regarding plaintiff's claim that he and a similarly situated Rite Aid pharmacy manager were subjected to disparate treatment, and that it had not instructed the jury regarding the standard governing plaintiff's

7

disparate treatment claim. The court declared a mistrial, ordered a new trial, and barred plaintiff from presenting evidence regarding his disparate treatment claim in the new trial.

Plaintiff again appealed the trial court's judgment. The Appellate Division affirmed in part and reversed in part that judgment. The appellate court held that the trial court did not abuse its discretion when it declared a mistrial because it had not instructed the jury on the appropriate standard to determine plaintiff's disparate treatment claim. It held, however, that the trial court had improperly granted defendants' motion for judgment, and that plaintiff should be allowed to present evidence of disparate treatment in a third trial. This Court denied plaintiff's motion for leave to appeal, 235 N.J. 115 (2018), and motion for reconsideration, 236 N.J. 489 (2019).

The trial court conducted the third trial in June 2019. The jury returned a verdict in plaintiff's favor on his LAD sexual orientation discrimination claim against Rite Aid and Mauriello. The jury awarded $220,000 in compensatory damages for back pay against Rite Aid and Mauriello. It awarded punitive damages in the amount of $200,000 against Rite Aid and $500 against Mauriello. The jury denied plaintiff's claims for front pay and emotional distress damages.

In the wake of the verdict in the third trial, plaintiff moved for an award of counsel fees and costs.[3]  In plaintiff's initial submission, he asked the trial court to determine that a reasonable hourly rate for his lead counsel and the attorney who assisted in the first of the three trials was $725, and that a reasonable number of hours spent on this matter was 3,252.  He requested that the trial court determine the lodestar to be $2,355,892.50, and that the court apply a one hundred percent enhancement to the lodestar.  Plaintiff also sought an award of costs.  In total, plaintiff requested an award of $5,035,773.50 in attorneys' fees and costs.

In support of plaintiff's fee application, his lead counsel submitted a certification in which she stated that her practice focused on employment law and employment-related counseling and listed clients whom she had represented.  Plaintiff's counsel attributed the large number of hours billed to the case to erroneous rulings by the trial judges.  She attached to her certification an invoice setting forth time entries reflecting claimed billable

---

[3]  In the same application, plaintiff sought prejudgment interest.  The trial court awarded $38,975.28 in prejudgment interest on the award of damages for back pay.  Plaintiff did not appeal that determination, and the question of prejudgment interest is not before the Court.

hours, and enumerating the disbursements included in the proposed award of costs.

Defendants opposed plaintiff's application for attorneys' fees and costs. Citing unpublished Appellate Division opinions setting forth rates charged by New Jersey attorneys, defendants argued that the $725 hourly rate on which plaintiff premised his fee application was unprecedented in the relevant community. They also asserted that the description of billable hours in plaintiff's invoice did not appear to be contemporaneous with the work performed. Defendants submitted spreadsheets identifying time entries set forth in plaintiff's application that were, in defendants' view, excludable because they reflected hours spent on work unrelated to this case or on conducting appellate work rather than in proceedings before the trial court; they related to work by the assistant attorney, who did not submit a certification; they duplicated other time entries or represented that plaintiff's lead counsel had worked on the case for more than twenty-four hours in a single day; or they involved work performed in aspects of the case as to which plaintiff was ultimately unsuccessful or plaintiff's counsel's work, in defendants' view, was unproductive. Defendants also challenged some of the disbursements for which plaintiff sought reimbursement.

In response to defendants' submission, plaintiff filed a supplemental certification by his lead counsel providing additional details regarding the procedural history of the action. Counsel conceded that she had edited her original time entries prior to submitting her certification to add more detail. Plaintiff also submitted unsworn statements by two attorneys, captioned as certifications, in which the attorneys vouched for plaintiff's counsel's qualifications and experience and opined that the $725 hourly rate for which plaintiff sought reimbursement was reasonable. Plaintiff also relied on an article stating that legal fees were climbing at so-called "Big Law" firms and other law firms and another article noting high rates charged by lawyers litigating a bankruptcy proceeding unrelated to this case.

The trial court issued a seventy-three-page decision with a fifty-four-page spreadsheet reflecting its analysis of the time entries and disbursements set forth in plaintiff's invoice. The court stated that its detailed findings were required because plaintiff's submission was deficient in many respects and contained numerous duplicative and unsupported entries.

Addressing the question of a reasonable hourly rate for the legal services of plaintiff's counsel, the trial court addressed the factors identified in RPC 1.5(a) as relevant to an assessment of a reasonable counsel fee. The court stated that the certifications submitted by plaintiff's lead counsel did not

identify any client other than plaintiff whom she had represented in employment litigation. It found deficient the statements by the two attorneys supporting plaintiff's application because those statements did not qualify as certifications under Rule 1:4-4(b) and because neither attorney claimed to have experience in employment law or to be familiar with the rates charged by attorneys in LAD cases in the relevant community. The trial court stated that given the absence of information in plaintiff's fee application about billing rates in LAD cases in the community, it was required to rely on unpublished decisions in employment cases, none of which identified a reasonable hourly rate as high as the $725 per hour sought by plaintiff.

The court ruled that a reasonable hourly rate for plaintiff's lead counsel in this case was $375 per hour and a reasonable hourly rate for the assistant attorney was $325 per hour.

The trial court also found that the total number of hours for which plaintiff sought an award of fees was unreasonable. The court identified several categories of legal work that it viewed to be improperly included in plaintiff's fee application, including counsel's work on plaintiff's behalf in plaintiff's unrelated unemployment compensation matter, work performed for plaintiff in a New York matter, and the preparation of applications to disqualify the judge who presided over the second and third trials.

12

The trial court also excluded all time entries reflecting plaintiff's counsel's representation of plaintiff in the Appellate Division and in this Court; in the trial court's view, it could award no fees for appellate work because plaintiff did not seek an award in either appellate court under Rule 2:11-4.

The trial court cited plaintiff's counsel's multiple entries claiming that more than twenty-four hours of legal work had been performed in a single day. It stated that unwarranted hours were billed for certain tasks and ruled that counsel had spent an excessive amount of time on the fee application itself.

The court also rejected many of plaintiff's claims for costs incurred in disbursements to vendors, finding the request to be replete with errors and duplicate entries and inadequately supported with vendor receipts.

Defendants sought a fifty percent reduction of the lodestar on the ground that plaintiff could have settled the matter prior to trial and was unsuccessful on most of his claims. The trial court rejected defendants' argument that it was necessary to try the case because plaintiff's settlement demands were excessive. It noted, however, that plaintiff was successful only on his LAD sexual orientation claim, not on his LAD age or gender discrimination claims or his claims for defamation, intentional infliction of emotional distress, or breach of contract. The court also found that plaintiff's lead counsel

performed tasks that should have been assigned to a junior attorney or a paralegal. The trial court accordingly reduced the lodestar by twenty percent.

The trial court then considered plaintiff's request for a one hundred percent enhancement of the lodestar because plaintiff's counsel represented plaintiff on a contingent fee. Citing various courts' determinations of fee enhancement claims as reported in unpublished opinions, the trial court observed that there was a wide range of contingency enhancements in such claims. Noting the complex procedural history of the case, counsel's confidence in the strength of plaintiff's claims as reflected by the settlement demands she made on plaintiff's behalf, and the attorney's risk of nonpayment, the trial court awarded a twenty percent enhancement of the lodestar.

The trial court awarded $643,892.50 in counsel fees and $97,495.47 in costs, for a total of $741,387.97.

## C.

Plaintiff appealed the trial court's award of fees and costs, arguing that the court's refusal to award the total fees and costs that he demanded constituted an abuse of discretion.

The Appellate Division affirmed the trial court's judgment, which it found to be fully supported by the record and by unassailable legal conclusions. The appellate court concluded that the trial court had complied

14

with this Court's direction in <u>Rendine</u> that trial courts critically analyze lawyers' fee applications and found that the trial judge had fully explained her ruling on every component of plaintiff's proposed award of fees and costs. The Appellate Division also noted that plaintiff's request to the trial court for fees for work done on his first and second appeals contravened <u>Rule</u> 2:11-4, which requires lawyers to submit applications for fees to the appellate court within ten days after the termination of the appeal.

D.

We granted plaintiff's petition for certification, in which he challenged the Appellate Division's decision affirming the trial court's calculation of the fee award on two grounds: that the trial court used improper criteria in calculating reasonable attorneys' fees for work performed by his counsel in the trial court, and that the court incorrectly excluded from its award legal fees incurred in appellate work based on <u>Rule</u> 2:11-4. 250 N.J. 353 (2022). We also granted the applications of the American Civil Liberties Union of New Jersey (ACLU), the National Employment Lawyers Association -- New Jersey (NELA), and the New Jersey Association for Justice (NJAJ) to appear as amici curiae.

II.

A.

Plaintiff asserts that the trial court improperly denied part of his fee application based on unpublished decisions and the court's personal views. He argues that the Appellate Division's decision affirming the trial court's fee award disincentivizes competent counsel from pursuing LAD actions on behalf of victims of discrimination. Plaintiff contends that the Appellate Division's reliance on Rule 2:11-4's ten-day time limit to bar his application to recover legal fees for appellate work is unfair because plaintiff was not yet a prevailing party immediately after the conclusion of those appeals and was not yet entitled to seek an award of fees and costs.

B.

Defendants argue that the trial court properly undertook a detailed analysis of plaintiff's fee application, which they contend was incomplete and replete with errors. They assert that the trial court did not rely on unpublished opinions as precedent, but solely as an indication of the ordinary and customary legal fees charged by attorneys experienced in the litigation of LAD claims. Defendants contend that plaintiff is not entitled to recover fees or costs incurred in work before the Appellate Division or this Court because he never submitted a fee application to either appellate court under Rule 2:11-4.

C.

Amicus curiae ACLU urges us to base an hourly fee determination on policy considerations underlying fee-shifting provisions, not on an attorney's standard billing rate. ACLU contends that when a court decides a fee enhancement issue, it should afford substantial weight to the attorney's risk of nonpayment and the public service provided by counsel for plaintiffs in discrimination cases.

D.

Amicus curiae NELA argues that the trial court unfairly deducted twenty percent from the lodestar based on the failure of some of plaintiff's claims, and that the court's twenty percent contingency enhancement of the lodestar did not sufficiently account for the risk of nonpayment in this case. NELA takes no position on the $725 hourly rate that plaintiff requested in this appeal.

E.

Amicus curiae NJAJ asserts that the trial court and the Appellate Division erroneously rejected plaintiff's application for appellate legal fees based on Rule 2:11-4. NJAJ contends that Rule 2:11-4 should be construed in statutory fee-shifting cases to impose a ten-day time limit on fee applications on appeal only when the appellate court's decision confers on the plaintiff the status of a prevailing party.

17

III.

A.

We review the trial court's award of fees and costs in accordance with a deferential standard. Such an award "will be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion." Rendine, 141 N.J. at 317; see also Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (stating that Rendine's "deferential standard of review guides our analysis"). An appellate court may reverse a trial court's award of fees and costs for abuse of discretion when the court's decision "was based on irrelevant or inappropriate factors, or amounts to a clear error in judgment." Garmeaux v. DNV Concepts, Inc., 448 N.J. Super. 148, 155-56 (App. Div. 2016).

A trial court's interpretation of a court rule is a determination of law which this Court reviews de novo. Occhifinto v. Olivo Const. Co., LLC, 221 N.J. 443, 453 (2015).

B.

1.

"Under the so-called 'American Rule,' adhered to by the federal courts and the courts of this state, 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" Rendine, 141 N.J. at 322

18

(quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975)).

As an exception to the American Rule, our Legislature has prescribed in certain settings the award of reasonable counsel fees to attorneys for prevailing parties. Ibid. We have identified "three essential purposes" for such fee-shifting statutes: (1) to "address the problem of unequal access to the courts"; (2) to "provide the individuals, whose rights are being protected by the statutes, with the resources to enforce those rights in court"; and (3) to "encourage adequate representation" essential to ensure "that those laws will be enforced." Walker, 209 N.J. at 129-30 (quotations and alterations omitted). Fee-shifting provisions "are designed . . . to promote respect for the underlying law and to deter potential violators of such laws." Id. at 130 (omission in original) (quotation omitted).

The LAD includes such a fee-shifting provision. See N.J.S.A. 10:5-27.1. Subject to exemptions not relevant here, the Legislature provided that in "any action or proceeding brought" pursuant to the LAD, "the prevailing party may be awarded a reasonable attorney's fee as part of the cost." Ibid.

For purposes of the LAD, a "prevailing party" is a party who "succeed[s] on any significant issue in litigation which achieves some benefit the parties sought in bringing suit." Occhifinto, 221 N.J. at 450-51 (alteration in original)

19

(quoting R.M. v. Sup. Ct. of N.J., 190 N.J. 1, 10 (2007)).  Accordingly, "a plaintiff who is awarded some affirmative relief by way of an enforceable judgment against defendant or other comparable relief through a settlement or consent decree is a prevailing party under N.J.S.A. 10:5-27.1 of the LAD." Tarr v. Ciasulli, 181 N.J. 70, 86-87 (2004).

2.

Our court rules recognize claims brought under fee-shifting statutes as an exception to the American Rule.  Rule 4:42-9(a)(8) provides that "[n]o fee for legal services shall be allowed in the taxed costs or otherwise, except . . . (8) [i]n all cases where attorney's fees are permitted by statute."  Rule 2:11-4 provides that attorneys' fees for appellate work "may be allowed by the appellate court in its discretion" in "all actions in which an award of counsel fee is permitted by R. 4:42-9(a), except appeals arising out of mortgage or tax certificate foreclosures."

The court rules impose strict requirements for applications for awards of fees and costs.  Pursuant to Rule 4:42-9(b), "all applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated in RPC 1.5(a)."  Those factors govern the reasonableness of "[f]ees charged by one's own attorney."  Walker, 209 N.J. at 127.  The RPC 1.5(a) factors are

20

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

The affidavit must also include "a recitation of other factors pertinent in the evaluation of the services rendered, the amount of the allowance applied for, and an itemization of disbursements for which reimbursement is sought." R. 4:42-9(b). Under Rule 4:49-9(c), a fee application must "state how much had been paid to the attorney . . . and what provision, if any, has been made for the payment of fees to the attorney in the future." Like a motion for legal fees incurred for legal work before the trial court, a motion for legal fees incurred

21

for appellate work must be "supported by affidavits as prescribed by R. 4:42-9(b) and (c)." R. 2:11-4.

C.

In a series of decisions over nearly three decades, we have delineated a trial court's approach when it calculates a reasonable counsel fee award to a prevailing party under a fee-shifting statute. Walker, 209 N.J. at 130-41; Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 22-24 (2004); Szczepanski v. Newcomb Med. Ctr., Inc., 141 N.J. 346, 366-67 (1995); Rendine, 141 N.J. at 333-45. Together, those decisions set forth a framework for a trial court's determination of reasonable attorneys' fees pursuant to N.J.S.A. 10:5-27.1.

As we noted in Rendine, a court's most critical task in a fee award proceeding "is to determine the 'lodestar': the number of hours reasonably expended multiplied by a reasonable hourly rate." 141 N.J. at 334-35. We cautioned trial courts "to evaluate carefully and critically the aggregate hours and specific hourly rates advanced by counsel for the prevailing party to support the fee application," and directed judges not to "accept passively the submissions of counsel to support the lodestar amount." Id. at 335; accord Walker, 209 N.J. at 131.

The first step in the court's analysis is to "determine the reasonableness of the rates proposed by prevailing counsel in support of the fee application."

Furst, 182 N.J. at 22 (citing Rendine, 141 N.J. at 335). A reasonable hourly rate "'is to be calculated according to the prevailing market rates in the relevant community,' and should include an assessment of the 'experience and skill of the prevailing party's attorneys and [a] compar[ison] . . . to the rates prevailing in the community for similar services' by comparable lawyers." Walker, 209 N.J. at 132 (alterations and omission in original) (quoting Rendine, 141 N.J. at 337). Trial courts must "'ensure that the hourly rate awarded is fair, realistic, and accurate,' allowing for adjustments to the requested rate when appropriate." Ibid. (quoting Rendine, 141 N.J. at 337).

The prevailing party must support its fee application with proof of the reasonableness of the requested hourly rate, including evidence of the rates charged by lawyers of reasonably comparable skill, experience, and reputation in the relevant community. Id. at 132-33; Furst, 182 N.J. at 22; Rendine, 141 N.J. at 337. In Rendine, counsel for the plaintiffs relied on "certifications by several lawyers in their own firm" attesting to "the hourly rates for the participating lawyers," as well as "certifications from three experienced employment-law practitioners from other law firms," termed "unaffiliated lawyers," who "certified that the hourly rates billed by the attorneys that had worked on the litigation appeared to be reasonable and consistent with rates charged by lawyers of comparable seniority and experience." 141 N.J. at 318;

23

see also <u>Seigelstein v. Shrewsbury Motors, Inc.</u>, 464 N.J. Super. 393, 408 (App. Div. 2020) ("Counsel's undisputed submissions mirrored the certifications deemed acceptable in <u>Rendine</u>.").

The second component of the lodestar is the number of hours reasonably expended in the litigation. <u>Walker</u>, 209 N.J. at 130; <u>Rendine</u>, 141 N.J. at 334-35. The prevailing party's counsel must provide "fairly definite information as to the hours devoted to various general activities . . . and the hours spent by various classes of attorneys" as a basis for the court's lodestar calculation. <u>Walker</u>, 209 N.J. at 131 (omission in original) (quoting <u>Rendine</u>, 141 N.J. at 337). As we noted in <u>Walker</u>, we "assume that applications for counsel fees invariably would be accompanied by contemporaneously recorded time records that fully support the calculation of hours expended by all attorneys who participated in the matter." <u>Ibid.</u> (quoting <u>Szczepanski</u>, 141 N.J. at 367). We "permit reliance on reconstructed records only in 'exceptional' circumstances," and we retain "the 'discretion to exclude from the lodestar calculation hours for which counsel's documentary support is marginal.'" <u>Id.</u> at 131-32 (quoting <u>Szczepanski</u>, 141 N.J. at 367).

In <u>Rendine</u>, we instructed trial courts to analyze in detail an attorney's calculation of the number of hours reasonably expended, noting that "[i]t does not follow that the amount of time <u>actually</u> expended is the amount of time

reasonably expended." 141 N.J. at 335 (quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980)). As we explained,

> if the specific circumstances incidental to a counsel-fee application demonstrate that the hours expended, taking into account the damages prospectively recoverable, the interests to be vindicated, and the underlying statutory objectives, exceed those that competent counsel reasonably would have expended to achieve a comparable result, a trial court may exercise its discretion to exclude excessive hours from the lodestar calculation.
>
> [Id. at 336.]

"Whether the hours the prevailing attorney devoted to any part of a case are excessive ultimately requires a consideration of what is reasonable under the circumstances." Furst, 182 N.J. at 22-23. We do not "construe New Jersey's fee-shifting statutes to require proportionality between damages recovered and counsel-fee awards even if the litigation . . . vindicates no rights other than those of the plaintiff." Szczepanski, 141 N.J. at 366. Nonetheless, "[t]he trial court's responsibility to review carefully the lodestar fee request is heightened in cases in which the fee requested is disproportionate to the damages recovered." Ibid. In cases like those, "the trial court should evaluate not only the damages prospectively recoverable and actually recovered, but also the interest to be vindicated in the context of the statutory objectives, as well as any circumstances incidental to the litigation that directly or indirectly

25

affected the amount of counsel's efforts," and may accordingly exclude excessive hours from the lodestar calculation.  Id. at 366-67.

"Third, a trial court should decrease the lodestar if the prevailing party achieved limited success in relation to the relief he had sought."  Furst, 182 N.J. at 23; see also Walker, 209 N.J. at 132; Rendine, 141 N.J. at 336.  As we observed in Rendine, if the party seeking a fee award "has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount," even if the plaintiff's claims are "interrelated, nonfrivolous, and raised in good faith.'"  Rendine, 141 N.J. at 336 (quoting Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983)); see also Packard-Bamberger, 167 N.J. at 447 (declining to disturb the trial court's award after noting that the court had "scrutinized the value of the services that plaintiffs' counsel provided, and evaluated the disparity between the relief initially requested by plaintiffs and that which was ultimately awarded").

Fourth, when the prevailing party's counsel has handled the matter under a contingent fee arrangement, the "trial court should decide whether that attorney is entitled to a fee enhancement."  Furst, 182 N.J. at 23; see also Rendine, 141 N.J. at 337 ("[T]he trial court, after having carefully established the amount of the lodestar fee, should consider whether to increase that fee to

26

reflect the risk of nonpayment in all cases in which the attorney's compensation entirely or substantially is contingent on a successful outcome."). As we explained in Rendine, "a counsel fee awarded under a fee-shifting statute cannot be 'reasonable' unless the lodestar, calculated as if the attorney's compensation were guaranteed irrespective of result, is adjusted to reflect the actual risk that the attorney will not receive payment if the suit does not succeed." Id. at 338.

Nevertheless, we "did not leave the award of contingency enhancements to chance or whim" in Rendine, but "established guidelines that were designed to effectuate the purposes that statutory fee-shifting provisions are intended to advance." Walker, 209 N.J. at 138. Pursuant to those guidelines,

> contingency enhancements in fee-shifting cases ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar. Such enhancements should never exceed one-hundred percent of the lodestar, and an enhancement of that size will be appropriate only in the rare and exceptional case in which the risk of nonpayment has not been mitigated at all, i.e., where the "legal" risk constitutes "an economic disincentive independent of that created by the basic contingency in payment . . . [and] the result achieved . . . is significant and of broad public interest." Enhancements of that magnitude will be reserved for cases of that description in which no prospect existed for the attorney to be compensated by payment of a percentage of a large damages award, and in which the relief sought was primarily equitable in nature.

27

> [Rendine, 141 N.J. at 343 (omissions in original)
> (quoting Pennsylvania v. Del. Valley Citizens' Council
> for Clean Air, 483 U.S. 711, 751 (1987) (Blackmun, J.,
> dissenting)).]

In Walker, we reaffirmed that the "ordinary" range for a contingency enhancement is between five and fifty percent of the lodestar, the "typical" range is between twenty and thirty-five percent of the lodestar, and a one hundred percent enhancement is reserved for the "rare and exceptional case." 209 N.J. at 138 (quoting Rendine, 141 N.J. at 343). We stated that a trial court setting a contingency enhancement "should take care to explain how the . . . enhancement it selects comports with the usual and typical ranges for such enhancements" identified in Rendine and how the court's determination "advances the goals . . . our Legislature intended to achieve through the fee-shifting mechanism." Id. at 148.

Rendine and its progeny thus provide detailed guidance to courts, parties, and counsel as to the factors to be considered when a trial judge determines an application for an award of fees and costs under N.J.S.A. 10:5-27.1. That standard, which we reaffirm today, governs our determination of this appeal.

IV.

A.

We concur with the Appellate Division that the trial court properly exercised its discretion when it calculated a reasonable hourly fee for the legal services provided by plaintiff's counsel.

As the trial court noted, plaintiff did not present the required proofs of the hourly rates prevailing in the community for similar services by comparable lawyers. See Walker, 209 N.J. at 132; Rendine, 141 N.J. at 337. The trial court observed that there was no evidence in plaintiff's submission that his counsel was a leading practitioner in employment litigation whose billing rate was $725 per hour. The court declined to rely on the statements of two lawyers submitted by plaintiff in this case, finding that those statements were not properly certified in compliance with Rule 1:4-4(b) and did not establish that either lawyer was experienced in employment law or was familiar with the prevailing hourly rates in the relevant community. Challenged by defendants to demonstrate the reasonableness of that rate -- and given an opportunity to present the required proofs in reply -- plaintiff instead relied on press accounts of high billing rates charged by "Big Law" firms and "astronomical" legal fees paid to counsel in an unrelated bankruptcy. We

29

agree with the trial court that plaintiff's proofs on the question of a reasonable hourly rate for the legal services rendered in this case fell short of the mark.

We do not approve of the trial court's reference to billing rates cited in unpublished Appellate Division opinions. As the Appellate Division noted in Seigelstein, reliance on rates identified in unpublished opinions runs afoul of Rule 1:36-3, which provides that "[n]o unpublished opinion shall constitute precedent or be binding upon any court." 464 N.J. Super. at 408 (quoting R. 1:36-3). We caution trial courts to avoid relying on such opinions when they determine applications for attorneys' fees and costs.

This case, however, stands in stark contrast to Seigelstein, in which the trial court rejected the plaintiff's thorough and unrebutted proofs in favor of information found in unpublished opinions and observations based on the judge's fifteen years' experience in private practice. Id. at 403-04, 407-08. Here, the unpublished opinions played only a minor role in the trial court's analysis -- the court stated that it referred to those opinions only to confirm that they cited no billing rate at or near $725 per hour -- and the trial judge did not invoke her experience in private practice. The court's reference to unpublished opinions, albeit improper, was not material to its determination of a reasonable billing rate.

We view the trial court's determination that a reasonable hourly rate for plaintiff's lead counsel was $375 and a reasonable hourly rate for plaintiff's assistant counsel was $325 to be within its discretion, and accordingly affirm the Appellate Division's judgment with respect to that issue. In doing so, we emphasize that this rate is case-specific, and our affirmance of the court's discretionary decision should not be viewed as a generic approval of a maximum or minimum billing rate for other cases.

B.

We next consider the trial court's determination of a reasonable number of hours spent in legal services rendered in pretrial proceedings and at trial. We concur with the Appellate Division's decision affirming the trial court's judgment as to a reasonable number of hours spent by plaintiff's counsel in the pretrial and trial stages.

In order to calculate the reasonable number of hours expended by plaintiff's counsel doing pretrial and trial work, the trial court undertook the meticulous analysis that we envisioned in Rendine. See Rendine, 141 N.J. at 335-36. In its detailed opinion and spreadsheet, the court identified categories of legal work that were improperly included in plaintiff's fee application, such as work performed by counsel on plaintiff's unemployment appeal, work conducted by plaintiff's prior law firm, and work on discovery in a separate

New York matter.  The trial judge also excluded time spent on plaintiff's attempts to disqualify the judge from presiding over this matter, plaintiff's unsuccessful effort to oppose defendants' motion for a judgment notwithstanding the verdict on the defamation claim, and other categories of legal work that did not further plaintiff's cause.

The court also identified time entries reflecting hours that required substantial reduction.  Among other concerns, the court identified time entries for one lawyer's work that attributed more than twenty-four hours to a single day -- including one entry for 33.9 hours in one day -- as well as duplicate entries and time entries that plaintiff conceded were drafted for the application rather than recorded contemporaneously with the claimed legal work.  The trial court's line-by-line deletions and reductions of time entries constituted a proper exercise of its discretion.

We also hold that the trial court properly exercised its discretion when it reduced the lodestar by twenty percent because of plaintiff's limited success in comparison with the relief that he sought in this action.  See Furst, 182 N.J. at 23 (noting the trial court's obligation to decrease the lodestar "if the prevailing party achieved limited success in relation to the relief he had sought"); Rendine, 141 N.J. at 336 (same).  There is no suggestion that the trial court improperly mandated proportionality between the legal fees and the damages

recovered by plaintiff. See Szczepanski, 141 N.J. at 366. Instead, the court found that plaintiff's claims for defamation, intentional infliction of emotional distress, and breach of contract -- all of which proved unsuccessful -- were distinct from plaintiff's LAD sexual orientation discrimination claim on which he ultimately prevailed, and that counsel's work on those claims had little nexus to the LAD claim. Accordingly, the trial court acted within its discretion when it found that plaintiff's lack of success in pursuing the majority of his claims warranted a twenty percent reduction of the lodestar.

In sum, we view the trial court's determination of the reasonable hourly rate and reasonable number of hours spent on legal work in pretrial matters and at trial and its twenty percent reduction of the lodestar to constitute a proper exercise of its discretion.[4]

### C.

We agree with plaintiff's argument that Rule 2:11-4 should not bar an award of any legal fees for appellate work in this matter, and reverse the Appellate Division's decision with respect to that issue.

---

[4] To the extent that plaintiff's challenge to the trial court's reduction of plaintiff's proposed award of legal fees implicitly includes a challenge to the court's reduction of the award of costs sought by plaintiff, we concur with the Appellate Division that the trial court properly exercised its discretion in its award of costs.

33

Rule 2:11-4 requires that a motion for legal fees rendered in an appeal "be served and filed within 10 days after the determination of the appeal." The Rule further provides that

> [i]n its disposition of a motion or on an order of remand for further trial or administrative agency proceedings, where the award of counsel fees abides the event, the appellate court may refer the issue of attorney's fees for appellate services for disposition by the trial court or, if applicable, by the agency that is serving solely as the forum and that has the authority to award counsel fees against litigants appearing in the forum.
>
> [R. 2:11-4.]

In this matter, plaintiff did not file an application under Rule 2:11-4 during the ten-day period following the determination of either of his prior appeals. The trial court therefore excluded all of plaintiff's counsel's legal fees for appellate work from the fee award.

We acknowledge that the trial court and the Appellate Division enforced Rule 2:11-4's express language to bar plaintiff's application for legal fees on appeal. This case illustrates, however, that the ten-day time limit set forth in Rule 2:11-4 is impractical and inequitable in certain settings. In the wake of the Appellate Division's determination of his first and second appeals, plaintiff was not yet a "prevailing party" entitled to seek counsel fees under N.J.S.A. 10:5-27.1 because he had not succeeded as to any significant issue that achieved some of the benefit that he sought in bringing his action. See

34

<u>Occhifinto</u>, 221 N.J. at 450-51; <u>Szczepanski</u>, 141 N.J. at 355. Accordingly, during each of the two ten-day time periods during which plaintiff could have sought attorneys' fees for his counsel's appellate work under <u>Rule</u> 2:11-4, he had no right to such fees under N.J.S.A. 10:5-27.1. Any such motion would not only have been futile, but frivolous.

As currently drafted, <u>Rule</u> 2:11-4 invites plaintiffs in LAD cases who are not -- and may never be -- prevailing parties under N.J.S.A. 10:5-27.1 to file meritless motions for appellate counsel fees in the Appellate Division in order to avoid an argument that they have waived their right to such fees, thus wasting judicial and litigant resources.

The Court of Appeals for the Eleventh Circuit has addressed an analogous procedural quandary in federal practice in a local rule, 11th Cir. R. 39-2. That rule generally imposes a fourteen-day deadline for applications for attorneys' fees for appeals to the Eleventh Circuit.[5] It creates, however, an

---

[5] Subsection (a) of the rule provides in part that,

> [e]xcept as otherwise provided herein or by statute or court order, an application for attorney's fees must be filed with the clerk within 14 days after the time to file a petition for rehearing or rehearing en banc expires, or within 14 days after entry of an order disposing of a timely petition for rehearing or denying a timely petition for rehearing en banc, whichever is later.

> [11th Cir. R. 39-2(a).]

35

exception to that deadline when -- as occurred here -- an appellate court reverses a district court judgment and orders a remand:

> When a reversal on appeal, in whole or in part, results in a remand to the district court for trial or other further proceedings (e.g., reversal of order granting summary judgment, or denying a new trial), a party who may be eligible for attorney's fees on appeal after prevailing on the merits upon remand may, in lieu of filing an application for attorney's fees in this court, request attorney's fees for the appeal in a timely application filed with the district court upon disposition of the matter on remand.
>
> [11th Cir. R. 39-2(e)]

The Eleventh Circuit has construed its Local Rule 39-2(e) to confer on a district court the discretion to include hours spent on such an appeal in its award of attorneys' fees without being directed by the appellate court to do so. Gray ex rel. Alexander v. Bostic, 613 F.3d 1035, 1044 (11th Cir. 2010) ("Because we reversed the district court's dismissal of [the] complaint the first time the case was before us . . . [Local] Rule 39-2(e) gave the district court discretion to include appellate hours spent on that appeal in its fee calculation.").

We view the exception to the deadline for the filing of an application for attorneys' fees adopted by the Eleventh Circuit to sensibly promote judicial economy and to fairly balance the interests of parties litigating claims under fee-shifting statutes. We request that the Civil Practice Committee propose an

36

amendment to Rule 2:11-4 analogous to the remand provision adopted by the Eleventh Circuit in its Local Rule 39-2. Absent exceptional circumstances, such an amendment would apply only to fee-shifting cases in which an appellate court reverses and remands for further proceedings, such that the party that has succeeded in the appeal is not yet a prevailing party entitled to an award of fees and costs. In such a setting, a party that later becomes a prevailing party by virtue of a determination on remand should be permitted to seek appellate legal fees directly from the trial court. Pending the Civil Practice Committee's recommendation of an amended Rule and the Court's consideration of that recommendation, courts, parties, and counsel should proceed in accordance with the procedure for applications for appellate fees set forth above.

We remand this matter to the trial court[6] for reconsideration so the court may analyze plaintiff's application for legal fees incurred on appeal and determine whether the time entries for appellate work set forth in plaintiff's application for attorneys' fees are reasonable. We express no view as to the reasonableness of any of those time entries and leave that determination to the trial judge on remand.

---

[6] The trial judge who determined plaintiff's application for attorneys' fees and costs should handle the matter on remand.

37

D.

Finally, we review the Appellate Division's decision affirming the trial court's determination of the contingency fee enhancement.

We do not view this appeal to present a "rare and exceptional case" that would warrant enhancement at or near the one hundred percent enhancement that plaintiff demanded; the relief sought was not equitable, and the "legal" risk to plaintiff's counsel was the economic disincentive created by the contingency-fee payment arrangement, and nothing more. See Rendine, 141 N.J. at 343. This case instead constitutes "typical" employment discrimination litigation in which a fee enhancement in the range between twenty and thirty-five percent of the lodestar is generally appropriate. See Walker, 209 N.J. at 138; Rendine, 141 N.J. at 343.

Nonetheless, we do not concur with the trial court's determination that a twenty percent enhancement -- at the lowest level of the range for typical litigation -- is appropriate for this case. Over more than a decade, plaintiff's counsel, representing plaintiff on a contingent-fee basis, tried the case three times and litigated two appeals on the merits to the Appellate Division. Counsel's risk of nonpayment was significant. In order to fairly compensate plaintiff and to further the objectives of N.J.S.A. 10:5-27.1, some degree of

increase in the enhancement is warranted.  See <u>Walker</u>, 209 N.J. at 148; <u>Rendine</u>, 141 N.J. at 338.

Accordingly, after calculating reasonable attorneys' fees for appellate work in accordance with <u>Rendine</u> and <u>Walker</u> and adjusting the lodestar accordingly, the trial court should reconsider the amount of the contingency fee enhancement, apply that enhancement to the lodestar, and issue an amended decision on plaintiff's motion for an award of attorneys' fees and costs.

V.

The judgment of the Appellate Division is affirmed in part and reversed in part, and the matter is remanded to the trial court for further proceedings in accordance with this opinion.


CHIEF JUSTICE RABNER; JUSTICES SOLOMON and PIERRE-LOUIS; and JUDGE SABATINO (temporarily assigned) join in JUSTICE PATTERSON's opinion.  JUSTICE FASCIALE did not participate.